## THE PEOPLE *v.* HENRY RHONER.

A warrant of commitment is irregular in not stating or showing on its face that the justice issuing it had determined that there was probable cause to believe the prisoner guilty of the offence with which he stood charged.

Bank notes wholly printed or engraved, are the subjects of forgery, and counterfeits of them, wholly printed or engraved, made with the intent to defraud, are forgeries within the 33d section of 2 R. S., 673.

The prisoner was charged, under section 33 of 2 R. S., 673, with forging notes of the "Austrian National Bank," and under section 36 of 2 R. S., 674, with having such forged notes in his possession, with intent to utter them. It appeared that the notes of the "Austrian National Bank," including the signature of the "cashier director," were wholly printed or struck from an engraved plate, and the counterfeits found in the possession of the prisoner were evidently made in a similar manner: *Held*, that such bank notes were covered by the word "instrument," in section 33 referred to, though no part of them was written, and that the offence of counterfeiting them was forgery under the statute.

THIS case came before Mr. Justice *Sutherland*, on *habeas corpus*, at chambers.

At the same time that the writ of *habeas corpus* was issued to the warden of the city prison to bring up the body of the prisoner, Henry Rhoner, writs of *certiorari* were issued to James H. Welsh, the police justice who committed the prisoner, and to Joseph Blunt, Esq., the district attorney of the city and county of New York, commanding them severally to certify the day and the cause of the imprisonment of Rhoner.

Justice Welsh returned to the *certiorari* directed to him, that he took a certain complaint, under oath, against Rhoner, and certain other testimony, which he reduced to writing; that Rhoner waived a further examination of the case, and that he thereupon made his warrant of commitment to the warden of the city prison, committing him under the complaint, and that, as required by law, he had returned to the court of General Sessions all the testimony taken before him.

To the *certiorari* directed to him, Mr. Blunt, the district attorney, returned the complaint and depositions taken before Justice Welsh, and returned by him to the Court of Sessions.

To the writ of *habeas corpus*, the warden of the city prison made return by producing the body of the prisoner, and annexing to the writ, and certifying as the cause of detention, a copy of the warrant of commitment of Justice Welsh, from which it appeared that the prisoner was charged before Justice Welsh, on the oath of Joseph Keefe, with having, on the 19th day of November, 1858, at the city of New York, in his possession, twenty-two bank notes, purporting to be each one hundred guilder notes, of the "Austrian National Bank," with the knowledge that the same were forged and counterfeited notes on said bank, with intent to defraud.

The prisoner answered the return to the *habeas corpus*, by alleging, substantially, that the only testimony before Justice Welsh, upon which he issued the warrant of commitment, was that contained in the complaint and depositions so returned by the district attorney to the *certiorari* issued to him; and that such complaint and depositions do not show that the prisoner had committed or been guilty of any criminal offence, to

authorize or justify the issuing of the warrant of commitment.

*Henry L. Clinton* and *F. S. Stallknecht,* for the prisoner.

*J. Larocque, J. R. Whiting* and *Joseph Blunt* (District Attorney), for the People.

SUTHERLAND, J. Without passing upon the question of the regularity of the writs of *certiorari* and *habeas corpus* issuing at the same time, or of the writs of *certiorari* issuing to the district attorney and to Justice Welsh, in this case, inasmuch as the complaint and depositions upon which the prisoner was committed, have been actually returned by the district attorney, and are before me, and the prisoner asks to make them a part of his answer to the return to the *habeas corpus,* I shall consider the complaint and testimony before the committing magistrate properly before me, and look into them to see whether they contain sufficient to authorize the commitment and imprisonment of the prisoner, provided I am authorized in this case to go behind the commitment and look into the depositions before Justice Welsh.

Without examining or deciding the question so elaborately argued before me in this matter, whether, if the commitment were regular on its face, I could go behind it and look into the depositions and review the decision or determination of Justice Welsh upon the testimony, I am of the opinion that the commitment is not regular; and that I am authorized, and that it is my duty in this case, to look into the depositions before the justice to see whether the prisoner's commitment was authorized and his detention is legal.

Without adverting to any other particular, I think the commitment is irregular in not stating or showing on its face that the justice had determined that there was probable cause to believe the prisoner guilty of the offence with which he stood charged. I think the commitment should show on its face this

determination or judgment of the committing magistrate, and that in the absence of it I ought to look into the testimony before him to see whether in fact there was or is probable cause to believe the prisoner guilty of the criminal offence with which he was charged, or of any criminal offence.

I have accordingly looked into the depositions before the justice, upon which the prisoner was committed.

I find that the prisoner and two others, John Kaegi and John Sturzenegger, were arrested and brought before the justice, charged with passing and having in their possession, with intent to pass, a large number of forged bank notes of the Bank of Austria, and without referring to the particulars or details of the depositions, it is sufficient to say, if the instruments or bank notes so alleged to be forged, were forged, or could be the subjects of forgery, within the statutory definitions of that crime contained in the Revised Statutes, that then these depositions are abundantly sufficient to show that there is probable cause to believe that the three prisoners were guilty not only of passing certain of these forged bank notes, knowing them to be forged, and of having others of them in their possession with intention to pass them, but of forging them.

Several of the alleged forged notes, found in the trunk of Rohner and on the persons of the other two prisoners, are annexed to depositions. Of those found in the trunk of Rohner, some of them appear not to be complete or entirely filled up, and every part of such as appear to be complete or entirely filled up, *including the signature of the cashier* or "*cashier director,*" is *evidently a print or impression from an engraved plate.*

Not only are the vignette, the scroll at the top, the heads at the ends, and the Austrian coat of arms at the bottom of the bill, impressions from an engraved plate or plates, but the entire instrument, including the signature, is evidently an engraving or an impression from plate or plates.

The alleged forged notes are in the German language, and the following is a translation of one of them, made and handed

to me by one of the counsel for the prisoner, on the hearing of this matter:

" 100                    Hundred Guilders.                    100 "
   " The privileged Austrian National Bank pays to the Bearer against this Draft, Hundred Guilders, Silver Currency, according to the conventional value.
   " For the privileged Austrian National Bank,

                        " H. WEITTENHILLER,
                                        " *Cashier Director.*
" Vienna, the 1 January, 1847."

It appears from the depositions taken before the justice in this matter, that there is and was a bank or corporation called the Austrian National Bank, incorporated and authorized by the laws of the empire of Austria, to issue circulating notes; and that the alleged forged bank notes, so found in the possession of the prisoner, were false, forged and counterfeit, and made in the form and similitude of the genuine bank notes or bills issued by the said "Austrian National Bank."

It does not appear from the depositions before the justice whether the signature to the genuine bank notes of the said bank is or is not engraved; but the counsel for the prisoner, on the hearing of this matter before me, offered to prove that every part of the genuine bank notes or issues of the said bank, including the signature, was and is a print or impression from an engraved plate; and in disposing of the only ground or point on which the counsel for the prisoner insist that the depositions do not show that the prisoner has been guilty of any crime, and move for his discharge. I shall assume that every part of the genuine, as well as of the alleged forged notes, including the signatures, is a print or impression from an engraved plate. Being so, the counsel for the prisoner insist that these alleged forged notes cannot be forgeries, or the genuine notes the subjects of forgery, because they are not *writings;* that at common law, as well as under the Revised Statutes, *writings,* or *written* instruments only, are the subjects of forgery.

Having examined this question with some care, I have no hesitation in expressing the opinion that the counsel for the prisoner are clearly mistaken in their interpretation of the provisions of the Revised Statutes in relation to forgery.

By section 33 (2 *R. S.*, 673), every person who, with intent to injure or defraud, shall falsely make, alter, forge or counterfeit "any *instrument* or writing, being or purporting to be the act of another, by which any pecuniary demand or obligation shall be, or shall purport to be, created, increased, discharged or diminished, or by which any rights or property whatever shall be or purport to be transferred, conveyed, discharged, diminished, or in any manner affected, the punishment of which is not hereinbefore prescribed, by which false making, forging, &c., *any person may be affected, bound, or in any* way injured in his person or property, upon conviction thereof shall be adjudged guilty of forgery in the third degree."

The revisers, in their note to this section, after stating that the first section of the old statute (1 *R. L.*, 404), contained an enumeration of a great number of *instruments* specifically described as the subjects of forgery, and that the same practice had prevailed in England of enumerating particular instruments, by enacting new statutes to reach new cases as they arose, until they amounted to 403, say that section 33 had been prepared, "to avoid cavil, to reach every case of forgery that has ever been committed, or that ever can be committed, and to afford a definite and distinct rule."

By section 36 (2 *R. S.*, 674), "every person who shall have in his possession any forged, altered or counterfeit negotiable note, bill, draft, or other evidence of debt, issued, or purporting to have been issued, by any corporation or company duly authorized for that purpose by the laws of the United States, or of this State, or of any other State, government or country, the *forgery of which* is hereinbefore declared to be punishable, knowing the same to be forged, &c., with intention to utter the same as true or false, with intent to injure or defraud, &c., shall, upon conviction, be subject to the punishment herein prescribed for forgery in the second degree."

At common law and by statute, the gist of the crime of forgery is fraud. At common law, the crime of forgery was defined to be "the fraudulent making or alteration of a writing to the prejudice of another man's rights." (4 *Blac. Com.*, 247.)

As the wants of civilization and commercial necessity established paper credit, and from time to time called into use new instruments in writing, statutes were from time to time passed, punishing, with severer penalties, the forging of such instruments.

Increased facilities and cheapness in the use of type, has, in our day, in a great measure, substituted printing for writing, and now printed instruments, and instruments partly printed and partly written, are quite as common as instruments wholly written.

The fraudulent intent with which an instrument is forged, or with which a forged instrument is possessed, being the very gist and essence of the crime, without which the counterfeiting might be nothing more than innocent amusement, it is very clear, without reference to statutory definitions, that the making of a printed or engraved instrument calculated to deceive and defraud, with intent to deceive and defraud, might be just as much forgery as the making of a written instrument with the same intent. The crime depends on the intent, and the intent is to be inferred from and depends on facts and circumstances.

If the prisoner Rhoner had caused to be printed or written an ordinary negotiable promissory note, and had with ordinary printing type impressed the name of "John Smith" upon it as a signature, or in the place of a signature, it would have been difficult, if not absurd, to believe that he had forged the note, for individuals do not *print* their names to their notes, but write them; and therefore it would have been difficult to believe that he could have defrauded any one with the note, by making them believe that it was the note of any one of the "John Smiths" in the city of New York.

A person may be guilty of forgery in writing his own name to an instrument, if done with intent to defraud by representing himself to be a different person of that name. (4 *T. R.*, 28.)

By statute (2 *R. S.*, 675, § 47) and by the common law, a person may be guilty of forgery by affixing the pretended signature of a *fictitious* person to an instrument.

It is not necessary in an indictment for forging an instrument, to allege that the instrument or its pretended signature was or is in writing, or whether they are or were printed or written, provided the whole instrument is set out in the indictment (*The People* v. *Rynders*, 12 *Wend.*, 431.)

The crime does not consist in making a false instrument, or false signature to an instrument, in the similitude of a real instrument or signature. Such similitude is only to be presumed to have been intended as the means of accomplishing the fraud, and is used as evidence of the intention to defraud.

Corporations are immaterial creatures of the law, and, strictly speaking, can have no signature, but they can execute instruments by their corporate seal, or by the signatures of any one or more of their officers, under their by-laws and regulations. I do not see why a bank corporation, authorized to issue bank notes to circulate as money, unless prevented by the law which created it, should not, by its by-laws, provide that every part of its notes to be issued should be printed or engraved, including the signatures of the president and cashier; and certainly such entirely printed or engraved notes, if thus actually issued by the bank, would be good and valid in the hands of the holder against the bank, and I do not see why they would not be the subjects of forgery within section 33 of the Revised Statutes above mentioned.

No man has the right to use the name of another without his consent, either in print or in writing, as a signature to an effective instrument, or as a trade mark. Whether such unauthorized use of another's name as a signature is forgery, depends upon the intent with which it is used.

If every part of the genuine notes of the "Austrian National Bank" is printed, or an impression from an engraved plate, then the forger would most likely print or impress from an engraved plate every part of his counterfeits of such notes; but if the signatures to the genuine notes were written, I do not

see why counterfeits of them with engraved signatures, if from their similitude calculated to deceive and defraud, and made, printed or impressed with the intention to deceive and defraud, would not be forgeries, and the making of them forgery, within the statute.

It would certainly have been extraordinary if the revisers, with the declared intention of embracing within the definition of section 33 above referred to, every imaginable instrument which could be the subject of forgery, had omitted bank notes entirely printed or engraved as the genuine notes of the Austrian Bank are assumed to be, or forged notes wholly printed or engraved like those found on the person of the prisoner. I think they are not omitted; tl at so far as it relates to the nature and character of the instrument as the subject of forgery, they are within sections 33 and 36 of the article of the Revised Statutes concerning forgery, above referred to; and as it would appear, that among the impressions found in the trunk of the prisoner, some were not complete or entirely filled up, perhaps such imperfect impressions are within sub. 3 of section 30 of the same article.

I doubt whether the prisoner's counsel would ever have raised the question which has been raised in this matter, had it not been for section 45 of the same article, defining the words "writing" and "written instrument" as used in the article. But I think the words "*instrument*" and "*writing*" are not used in section 33 as synonyms; and that section 45 intends to define the words "writing" and "*written* instrument," and not the word "*instrument*," as used in the article alone and unconnected with the word "written."

The words of section 33 are: "Any instrument *or* writing, being or purporting to be," &c.

I think the word "*instrument*" includes not only "written instruments," and "writings," as defined by section 45, but also engraved or printed instruments, being or purporting to be the act of another; indeed, all and every kind of instrument by the forging of which any person "may be affected, bound or in any way injured in his person or property."

The People *v.* Rhoner.

I do not see why an engraved or printed instrument, or an engraved or printed name, affixed to an instrument by a person, is not his act, and may not purport to be the act of another.

If a person affixes his name to an instrument, with the purpose of making it effective as a signature, I do not see why it is not his instrument, and effective as against him, whether he so affixes his name with type, an engraved plate, a style, or pen.

I think the prisoner's case is clearly within the statute, and that the writ of *habeas corpus* must be discharged, and he be remitted back to the city prison.